### FREEMAN v. BUSCH JEWELRY CO., Inc.,
### No. 180.

United States District Court,
N. D. Georgia, Newman Division.
May 9, 1951.

Duke Davis, Wilson P. Darden, La-Grange, Ga., for plaintiff.

T. M. Smith, Jr., MacDougald, Troutman, Sams and Schroeder, Atlanta, Ga., for defendant.

HOOPER, Chief Judge.

In this action plaintiff seeks to recover $25,000 damages for wounded feelings and marital difficulties growing out of this transaction. It appears without dispute that the plaintiff, a young married man of LaGrange, Georgia, and his wife purchased from defendant company a radio for the sum of $19.95, on which payments of $1.25 per week were made for many weeks, there remaining on September 16, 1948, a small balance of $4.20.

Plaintiff at the time of the purchase was living at 912 Todd Street and working at Almond's Service Station, and continued to work and reside at the same places on September 15, 1948. On that date there came to plaintiff's residence through the mail, a postal card from defendant company bearing the following writing: "Dear Milford, I'll be in LaGrange next week. Call me at 9693. Love, Mary." Defendant was then at work. On returning home for lunch his wife showed him the post card. He attempted to explain to her that he did not understand its contents, that he knew no girl by the name of Mary and that he had had no affair with any person. After lunch he went to defendant company and caused its agent to phone his wife and make an explanation which, at that time, she apparently accepted. Upon further reflection, however, the wife, who was then in a delicate condition, worried considerably over the matter and later in the evening packed up her personal belongings, and, taking their child with her, went to live with her

mother. Some two weeks· later plaintiff was able to induce his wife to return home, she being then sick and apparently in need of help.

Prior to the receipt of this postal card this young couple were living happily together, with no other than the usual trivial domestic disagreements. After this time, however, things began to change. The wife could not free her mind from the thought that plaintiff might have been unfaithful to her and she did not trust him as before. When he would come home, after being out, she would ask him questions, and he, being irritated at her distrust, would decline to answer. His drinking, before this time only moderate, tended to increase as sometimes happens under the same or similar circumstances. He even struck his wife on one occasion. There have been other separations. It so happened that prior to the receipt of this postal card, plaintiff had been pursuing studies in Atlanta under the G. I. Bill of Rights, and, on two week-ends, instead of returning to his home, he remained in Atlanta, explaining to the satisfaction of his wife that he was busy studying.

There is no evidence that his stay in Atlanta over the week-end was anything but innocent. However, coupled with the other circumstances, it caused his wife to worry, and to distrust the husband. It does not appear that even to this time the confidence of his wife which plaintiff formerly enjoyed has been restored.

Plaintiff's wife sworn as a witness by defendant gave a fair and plausible account of her mental reactions. She trusted her husband prior to September 16th, and since that time on some occasions thought that she continued to trust him, and on other occasions, including the time of the trial, stated very frankly she just doesn't know what to think.

From the evidence in the case it is clear to the court that the receipt of this postal card was definitely the beginning of plaintiff's marital difficulties, that it caused plaintiff's wife for the first time to distrust him, and to leave him, that her distrust of plaintiff was the source of great annoyance and disappointment to plaintiff, and that subsequently thereto plaintiff has been more addicted to drink, according to his wife's own testimony, than previously.

While the parties have resumed their marital relationship and their cohabitation along with their two small children, it seems clear that the status of mutual respect and affection existing prior to September 16th does not now exist, though it is possible that the husband's exoneration by the judgment in this case might assist in its restoration in the future; at least the Court hopes so.

Defendant was guilty at least of a great degree of negligence in sending to this husband at his home an open postal card which on its face would convey to his wife no other impression than that the husband had a clandestine relationship with some person named Mary. The reactions of plaintiff's wife were to be reasonably anticipated. There are circumstances of aggravation: The radio which defendant sold had been practically paid for, a payment had been made shortly before; defendant had retained title and could have collected this small balance by retaking the radio, or other legal means.

Defendant contends that a bill sent to plaintiff came back with the notation by the post office that defendant had moved, but the bill in question was not produced in court.

The court finds that defendant committed a tort and that plaintiff's damages are in the sum of $5,000, although injuries and damages suffered by plaintiff are such as are not easily computed by any monetary standards.

### Conclusions of Law.

1—Where a merchandising corporation addresses and mails to a customer at his residence a postal card bearing the following message:

"Dear Milford,

"I'll be in LaGrange next week. Call me at 9693.

"Love,

"Mary," and

it is received and read by addressee's wife who concludes therefrom that her husband has a clandestine love affair with another woman and she thereupon leaves her husband, a tort is committed by the corporation

for which damages will be awarded to the husband.

2—The above ruling follows from the application of well-established rules of law. It is not necessary for this court to label plaintiff's action as one arising from violation of the right of privacy as plaintiff contends, or as arising, if at all, for alienation of affections as defendant contends, or, as seems more likely to this court, as arising from publication of a libel.

3—While not necessary to rule that the action arises from a libel, attention is called to the following citations from 53 C.J.S., subject Libel and Slander:

" 'Libel' has been defined as a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule. There is no real distinction between civil and criminal libels." (§ 1, page 32)

"Everyone has the right to the enjoyment of good reputation, of which no one may deprive him through falsehood and malice without liability therefor." (§ 4, page 39)

"Various publications concerning relations of men with women, which, although not imputing a want of chastity, yet tend to disgrace the party charged or to render him ludicrous or ridiculous, have been held libelous per se". (§ 31, page 75)

"A communication to plaintiff's spouse ordinarily is a publication within the contemplation of law." (§ 81, page 132)

"The mode of publication of a libel or slander is immaterial. * * *

"There is a conflict of authority on the question whether the mere posting and transmission through the mails of an uncovered postal card containing matter libelous of the person to whom it is addressed is an actionable publication. * * * Some cases hold the affirmative of the proposition * * * it has been held that in order to constitute actionable publication, the postal card must have been read or communicated to some person other than plaintiff". (See § 82, pages 134 and 135)

Under Georgia statute it is provided: "A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule. The publication of the libelous matter is essential to recovery." Georgia Code, Section 105–701.

There may be cases holding that this is not an action for libel but they have not been cited to the court and time does not permit of this court's exhausting the subject.

Suffice it to say, the implication of the postal card was libelous in that it conveyed the impression of infidelity on the part of the husband, it was published in that the wife was given every opportunity to read it, and actually did read it, and it caused damage to the plaintiff as herein set forth.

4—However, it is clear that a tort was committed by whatever name it is called: "A tort is the unlawful violation of a private legal right, other than a mere breach of contract, express or implied". Georgia Code, Section 105–101. The plaintiff undoubtedly had the right as alleged in his petition "the legal right to personal security in his home, including the right of enjoyment of life, and the enjoyment of the happiness of home and the love and confidence of his wife." The defendant injured plaintiff in the enjoyment of the above right by representing to plaintiff's wife in effect, that plaintiff was unfaithful to her. Defendant should have reasonably anticipated that the open postal card would fall into the hands of plaintiff's wife, would be read by her and would cause such a reaction as it actually did cause in this case. "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered". Georgia Code, Section 105–2009.

No issue was raised on the trial of this case as to the nature of plaintiff's damages excepting the contention of the defendant that plaintiff could not recover for loss of consortium of the wife, that contention being based upon the theory that plaintiff's case will not stand as one for aliena-

tion of affections. It would seem that plaintiff's recovery would be for loss of consortium and loss of services of his wife for the period of separation and also, punitive damages arising under Georgia Code, Section 105–2002 which reads as follows: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff."

The aggravating circumstances as recited in the Findings of Fact need not here be repeated.

5—From the above it follows that judgment should be rendered in favor of the plaintiff in the sum of $5,000.